## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

| | |
|---|---|
| COMMONWEALTH LIMOUSINE<br>SERVICE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMONWEALTH LIVERY, INC.,<br><br>Defendant. | Civil Action No._____<br><br>Jury Trial Requested |

## COMPLAINT

### STATEMENT OF THE CASE

Plaintiff Commonwealth Limousine Service, Inc. ("Commonwealth Limo") brings this action against Defendant Commonwealth Livery, Inc. ("Defendant" or "Commonwealth Livery") arising from Defendant's willful infringement of, and blatant attempts to trade upon and profit from, Commonwealth Limo's federally registered COMMONWEALTH LIMO® and COMMONWEALTH WORLDWIDE® service marks. Defendant's unlawful acts have caused and are causing serious and irreparable harm to Commonwealth Limo, through, among other things, incidents of actual confusion and Defendant's attempting to pass itself off as Commonwealth Limo. Accordingly, Commonwealth Limo hereby seeks injunctive relief and damages for Commonwealth Livery's willful infringement, dilution, and unfair competition in violation of federal and state law.

### PARTIES

1.    Plaintiff Commonwealth Limo is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 250 Everett Street, Allston, Massachusetts.

2.      Defendant Commonwealth Livery, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 400 Trade Center, Suite 5900, Woburn, Massachusetts.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 (federal question) and 1338 (patent, trademark, and unfair competition claims).  Commonwealth Limo's federal claims include trademark infringement, trademark dilution, and unfair competition under the Lanham Act.

4.      This Court further has supplemental jurisdiction over Commonwealth Limo's state law and common law claims pursuant to 28 U.S.C. §1367.  Commonwealth Limo's state and common law claims arise from or are substantially related to the same acts giving rise to its federal claims in this action.

5.      This Court has personal jurisdiction over Defendant because Defendant is a Massachusetts corporation with a principal place of business located in Woburn, Massachusetts.

6.      Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the infringing activity and unfair competition occurred, and indeed continues to occur, in the Eastern District of Massachusetts.  Further, venue in this district is proper pursuant to 28 U.S.C. §1391(c) because Defendant's principal place of business is in Woburn, Massachusetts.

## FACTUAL BACKGROUND

### Commonwealth Limo

7.      Dawson A. Rutter, Jr. ("Mr. Rutter") is the founder of the plaintiff in this action, Commonwealth Limousine Service, Inc. ("Commonwealth Limo" or the "Company").  By 1982, after having worked for about ten years in the passenger transportation industry, Mr. Rutter had recognized a void in the industry that he believed he could, and eventually did, fill – *i.e.* the industry suffered from a lack of excellence in the provision of service and accountability.

2

8.      In 1982, Mr. Rutter used his savings to purchase a single limousine and at that time created Commonwealth Limousine Service, Inc. a/k/a "Commonwealth Limo." Mr. Rutter began operating the small Company under the COMMONWEALTH LIMO service mark at that time.

9.      From the date he founded the Company, Mr. Rutter set out to grow Commonwealth Limo with a clear vision of providing excellent service. He did so by building the values of accountability, communication, exceptional customer care, and professionalism into the backbone of Commonwealth Limo.

10.     The very hard work Mr. Rutter invested in the Company and the careful branding of Commonwealth Limo's services under the COMMONWEALTH LIMO mark were almost immediately successful. In 1983, the Company's exceptional service earned Commonwealth Limo a Best of Boston award from Boston Magazine. Just one month after receiving that award, Commonwealth Limo's business tripled.

11.     During the proliferation of the internet in the 1990's, Mr. Rutter recognized an opportunity to take Commonwealth Limo's business to a new level by using the internet as a means of marketing. Accordingly, during the 1990's, the Company established its website, www.commonwealthlimo.com. Commonwealth Limo has used that website as its primary means of web-based marketing since it was established, and the Company has done so without interruption since. In addition, throughout the Company's existence, it has advertised in trade journals, conferences and through direct marketing.

12.     In 2003, Commonwealth Limo was first designated the Official Chauffeured Transportation Company of the Boston Symphony Orchestra and the Boston Pops, and it has remained their Official Chauffeured Transportation Company since.

13.     Commonwealth Limo also reached a milestone in 2003 when it was named by Limousine Digest Magazine to the *list of the top 10 largest limousine networks in the United States.*

14.     In 2004, Commonwealth Limo expanded its operations into the Greater New York market, and that same year received its third Best of Boston award from Boston Magazine. At around

3

that same time, Commonwealth Limo began operating under the moniker Commonwealth Worldwide Transportation and the related COMMONWEALTH WORLDWIDE service mark.

15.     In 2005, Commonwealth Limo was named by Limousine & Chauffeured Transportation Magazine as *the number one emerging company to watch.*

16.     Since 2005, Commonwealth Limo has only grown in size and reputation. Commonwealth Limo now operates in 550 cities and 39 countries throughout the world both directly and through a network of affiliates under the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks and is one of the largest providers of chauffeured transportation services in the world.

17.     The COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks have become synonymous with one another, and they have also become nationally recognized as synonymous with Commonwealth Limo's reputation for excellence in servicing the chauffeured transportation needs of the Company's clientele. The Company's goodwill and continued success derive from the association in the minds of the relevant purchasing public between the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks and the Company's unique excellence.

### *Commonwealth Limo's Registrations of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE Marks*

18.     On July 30, 2010, Commonwealth Limo applied to register the COMMONWEALTH LIMO mark with the United States Patent and Trademark Office ("PTO"). On August 9, 2011, the PTO issued Commonwealth Limo registration of the COMMONWEALTH LIMO mark, U.S. Reg. No. 4008544, in Class 39, in connection with passenger transportation services.

19.     On July 30, 2010, Commonwealth Limo also applied to register the COMMONWEALTH LIMO mark with the Secretary of the Commonwealth of Massachusetts. On August 2, 2010, the Secretary of the Commonwealth issued Commonwealth Limo registration of the COMMONWEALTH LIMO mark, MA Reg. No. 72902, in Class 43, in connection with passenger transportation services.

4

20.     On August 2, 2010, Commonwealth Limo applied to register the COMMONWEALTH

WORLDWIDE service mark with the PTO.  On August 9, 2011, the PTO issued Commonwealth Limo

registration of the COMMONWEALTH WORLDWIDE mark, U.S. Reg. No. 4008548, in class 39, in

connection with passenger transportation services.  Also on August 2, 2010, Commonwealth applied to

register the COMMONWEALTH WORLDWIDE graphic:



On August 9, 2011, the PTO issued Commonwealth Limo registration of the graphic, U.S. Reg. No.

4008549, in class 39, in connection with passenger transportation services.

21.     Commonwealth Limo has developed extensive goodwill and public recognition in and of

the marks, and the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks serve

as identifiers of the services that have been originated, developed, and offered by Commonwealth Limo,

together with the notions of excellence and accountability associated with the Company.

22.     The COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks are

distinctive.  Throughout the course of their history of continuous use, the COMMONWEALTH LIMO

and COMMONWEALTH WORLDWIDE marks have become well-known to the transportation trade and

to the relevant purchasing public.  To the extent that they initially were not distinctive, they have acquired

secondary meaning in the relevant market and have become famous marks.

### *Defendant's Unlawful Conduct*

23.     Defendant, also a chauffeured transportation service, and Commonwealth Limo are head-

to-head competitors in Massachusetts and elsewhere in the United States, including on the East Coast.

The companies compete for the very same clientele in the same geographic region.  Even a cursory glance

at the two companies' websites confirms that they compete for the same customers in the same market.

5

24.     Defendant's website is located at www.commonwealthlivery.com. Commonwealth

Limo, operating under the name Commonwealth Worldwide, continues to market its services on the

Commonwealth Limo website (www.commonwealthlimo.com).  At a glance, the

www.commonwealthlivery.com and www.commonwealthlimo.com domain names are virtually

indistinguishable.

25.     Defendant's website homepage suggests that Commonwealth Livery has been in

operation with "ten years in the industry."  However, according to the Secretary of the Commonwealth's

on-line corporate database, Defendant was organized as an entity on January 2, 2009, and on March 31,

2009, it changed its name from Boston Executive Coach Limousine, Inc. to Commonwealth Livery, Inc.

26.     According to the Secretary's website, an unrelated company, Boston Executive Coach &

Limousine, Inc. was established on January 3, 2007.

27.     The only difference between Defendant's former name "Boston Executive Coach

Limousine, Inc." and that of the unrelated company, "Boston Executive Coach & Limousine, Inc.," is that

the unrelated company's name contains an ampersand between the words "coach" and "limousine,"

whereas Defendant's former name contains no ampersand at all.

28.     Upon information and belief, Defendant's use of the name "Boston Executive Coach

Limousine, Inc." infringed upon either the trademark rights of the aforementioned Boston Executive

Coach & Limousine, Inc., or of the more well-known BostonCoach®, U.S. Reg. No. 2294068, another

passenger transportation company operating in Massachusetts.

29.     Defendant first came to Mr. Rutter's attention in May 2013 when he learned that

Defendant was passing itself off as Commonwealth Limo.  At that time, a member of Mr. Rutter's staff

reported to him that he had telephoned Defendant, inquiring whether Defendant was in fact

Commonwealth Limo.  The employee informed Mr. Rutter that Defendant's call taker responded, "yes,"

thus confirming that Defendant was in fact passing itself off, or attempting to pass itself off, as

Commonwealth Limo.

6

30.     Accordingly, on May 31, 2013, Commonwealth Limo, through its counsel in this action, sent a letter to the individual identified in filings available online with the Secretary of the Commonwealth as Commonwealth Livery's president, Ms. Violet Baker ("Ms. Baker").

31.     In that letter, the Company's counsel informed Commonwealth Livery that the COMMONWEALTH LIMO mark is registered with the PTO and with the Secretary of the Commonwealth of Massachusetts in the class of passenger transportation services and demanded that Commonwealth Livery:

        a.  Cease and desist in its use of the term "Commonwealth Livery" in connection with its offering of transportation services;

        b.  Discontinue its reference to itself as "Commonwealth Limo"; and

        c.  Confirm in a signed letter back to counsel that Commonwealth Livery has discontinued use of the term "Commonwealth Livery," including in its internet web domain name, and that it discontinue reference to itself as Commonwealth Limo.

32.     On June 6, 2013, Ms. Baker responded to Commonwealth Limo's counsel by letter, stating:

> We are in receipt of your letter dated May 31, 2013.
> Unfortunately, the General Manager John Kelley has suffered a major ischemic stroke recently and is unable to address this at this time. He will respond to this matter when he returns to his position. We sincerely appreciate your cooperation during this difficult time.

33.     On August 7, 2013, one of Commonwealth Limo's travel counselors, Minoshia Wright, took a call from a former client of the Company. The client called, complaining that he had mistakenly utilized Defendant's services, believing Defendant to be Commonwealth Limo.

34.     On August 12, 2013, Commonwealth Limo learned from its vehicle fleet maintenance provider that one of Defendant's drivers dropped off one of Defendant's vehicles with Commonwealth Limo's provider for service. Upon information and belief, Defendant's driver stated to the provider that he was "with Commonwealth," and upon further information and belief, he did so in an attempt to have

7

the service that was to be performed on Defendant's vehicle charged to Commonwealth Limo's account. Upon information and belief, the service provider initially believed that Defendant's driver was employed by Commonwealth Limo.

35.     During the week of August 19, 2013, Mr. Rutter was informed that that one of Commonwealth Limo's affiliates, CLT Express, based in North Carolina, had confused Commonwealth Livery with Commonwealth Worldwide.

36.     In sum, upon information and belief, a senior executive of CLT Express, Laura Cannady, was reviewing transactions when she discovered a transaction between Commonwealth Livery and CLT Express. Upon further information and belief, Ms. Cannady asked Commonwealth Livery, among other things, whether Commonwealth Livery was Commonwealth Worldwide and whether Commonwealth Livery was ever confused with Commonwealth Worldwide, and the Commonwealth Livery representative brushed off the questions.

### *There Has Been Actual Confusion Between Commonwealth Limo and Defendant*

37.     There have been incidents not only of actual confusion (*i.e.* the customer who called to complain on August 7, the fleet maintenance provider's mistaken belief that Defendant was Commonwealth Limo, and CLT Express' confusion about whether Commonwealth Livery was Commonwealth Worldwide), but intentional misrepresentation and attempt to pass Commonwealth Livery off as Commonwealth Limo (*i.e.* Defendant's employee's stating that Defendant was in fact Commonwealth Limo, Defendant's driver stating that he was "with Commonwealth," and Commonwealth Livery's failure to disclaim any affiliation with Commonwealth Worldwide to CLT Express).

38.     Upon information and belief, there are additional incidents of actual confusion of which Commonwealth Limo is currently unaware.

39.     Commonwealth Livery's infringement of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks in providing identical services causes, and is likely to cause, confusion as to source, sponsorship, and affiliation.

8

40.     This confusion has already diverted at least one sale away from Commonwealth Limo, and upon, information and belief, has diverted and will divert others.  In addition, this confusion tarnishes the Commonwealth Limo name and reputation Commonwealth Limo has worked tirelessly to develop for over 30 years.   The Company's marks were in use and had become famous marks long before Commonwealth Livery began operating or using the COMMONWEALTH LIVERY mark.

41.     Each of Commonwealth Limo's vehicles in Massachusetts is easily recognizable by the imprinting on all of their license plates of the four letter designation "COMM" followed by a number.  The "COMM" designation appears directly over the word "livery," which is stamped upon every commercial passenger transportation plate in Massachusetts.

42.     Thus, Commonwealth Limo is at yet further risk of confusion where Defendant's use of the name "Commonwealth Livery" is highly suggestive of an affiliation between Defendant and Commonwealth Limo, whose license plates contain the designation "COMM" above the word "livery." Upon information and belief, that is something Defendant hopes will happen with the result being that business will be diverted away from Commonwealth Limo and to Defendant.

43.     Indeed, Defendant's choice of "Commonwealth Livery" for a trade and business name appears to be no coincidence, but rather part of an ongoing effort to pass itself off as other limousine companies.  Upon information and belief, there are over 100 companies in Massachusetts offering passenger transportation services and operating under different names.  However, Defendant has now twice operated under names (Boston Executive Coach Limousine, Inc. and Commonwealth Livery, Inc.) that are strikingly similar to those of other very successful companies – BostonCoach® and Commonwealth Limo®/Commonwealth Worldwide®.

44.     Commonwealth Limo cannot control Defendant's use of the "Commonwealth Livery" mark.  Defendant's conduct has substantially damaged, and will cause substantial irreparable damage to, Commonwealth Limo's goodwill in its marks and its business unless enjoined by this Court.

45.     It is impossible to even ascertain the extent of the harm Commonwealth Limo has suffered to date and will continue to suffer in the absence of an injunction.

46.     If Defendant is permitted to continue to trade upon the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks, or an imitation thereof, or if it is permitted to continue to pass itself off as Commonwealth Limo, Commonwealth Limo will be irreparably harmed. Its reputation and goodwill will suffer in a way that money damages simply will never be able to compensate.

47.     Commonwealth Limo has never consented to Commonwealth Livery's conduct as described herein. Commonwealth Livery's conduct as set forth herein has, upon information and belief, been willful and intended to cause confusion as to the source of the services provided by Commonwealth Livery.

### Defendant Had Notice of Commonwealth Limo's Trademark Rights and Intentionally Disregarded Them

48.     Commonwealth Limo's trademark registrations constitute constructive notice to Defendant of Commonwealth Limo's ownership of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks in connection with the goods and services identified in its registrations.

49.     In addition, Defendant has received, and acknowledged receipt of, actual notice of Commonwealth Limo's trademark registrations of the COMMONWEALTH LIMO mark from counsel for Commonwealth Limo by letter dated May 31, 2013.

50.     Defendant has used a mark that is confusingly similar to the COMMONWELATH LIMO and COMMONWEALTH WORLDWIDE marks despite that it should have known prior to May 2013 of Commonwealth Limo's rights in both of its marks, *and did know as of May 31, 2013,* of Commonwealth Limo's long history of use of the COMMONWEALTH LIMO mark and its registrations thereof.

51.     Commonwealth Limo's use of the COMMONWEALTH LIMO mark for at least 27 years prior to Defendant's establishment of Commonwealth Livery, Inc. establishes that Defendant had constructive notice of the COMMONWEALTH LIMO mark when Defendant began operating under the name "Commonwealth Livery."

10

52.     Defendant's unauthorized use of Commonwealth Limo's mark and passing or attempting to pass itself off as Commonwealth Limo has caused, and will continue to cause, irreparable injury to Commonwealth Limo by falsely associating "Commonwealth Livery" with the COMMONWEALTH LIMO and/or COMMONWEALTH WORLWIDE marks and related trade names.  Such irreparable harm includes dilution of Commonwealth Limo's marks.

53.     Defendant's conduct as described herein has deprived, and will continue to deprive, Commonwealth Limo of its rights in the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks, thus permanently and irreparably harming Commonwealth Limo by creating confusion among the relevant purchasing public.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT IN VIOLATION OF OF THE LANHAM ACT (15 U.S.C. § 1114)

54.     Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

55.     Defendant's use of the "Commonwealth Livery" name and mark to market and sell services *identical* to those that Commonwealth Limo markets and sells under its COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks constitutes trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)).

56.     Defendant's use of "Commonwealth Livery" was intended to cause, has caused, and is likely to continue to cause, confusion among, mistake by, and deception of the relevant public concerning the source of the services provided by Defendant.

57.     Upon information and belief, Defendant's infringement of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks has been willful, wanton, and reckless.

58.     Commonwealth Limo has been damaged by Defendant's acts.

59.     Commonwealth Limo is without adequate remedy at law.

## COUNT II
### UNFAIR COMPETITION IN VIOLATION OF
### THE LANHAM ACT (15 U.S.C. § 1125(a))

60.    Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

61.    Defendant's unlawful acts constitute use in commerce.

62.    Defendant's acts have caused and are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendant with Commonwealth Limo as to the origin, sponsorship, or approval of Defendant's services.

63.    Defendant has engaged in unlawful acts that constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

64.    Defendant's acts are causing irreparable injury to Commonwealth Limo.

65.    Commonwealth Limo is without an adequate remedy at law.

66.    Commonwealth Limo will continue to suffer irreparable injury unless Defendant's use, whether direct or indirect, of "Commonwealth Livery", "Commonwealth Limo", "Commonwealth Worldwide" and any other confusingly similar mark or name is enjoined.

67.    Based on the foregoing, Commonwealth Limo has suffered money damages and loss of goodwill.

68.    Upon information and belief, Defendant's conduct, as described in this Complaint, has been willful, wanton, reckless, and in disregard of Commonwealth Limo's rights.

## COUNT III
### TRADEMARK DILUTION IN VIOLATION OF
### THE LANHAM ACT (15 U.S.C. § 1125(c))

69.    Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

70.    The COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks are famous marks. They are well-known throughout the United States and beyond, and they were famous before Defendant began using its "Commonwealth Livery" mark.

71.     As a result, Commonwealth Limo is entitled to protection of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks under 15 U.S.C. § 1125(c).

72.     Defendant's use of the "Commonwealth Livery" mark, which is confusingly similar to Plaintiff's COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks, in connection with confusingly similar services – indeed identical services – has diluted the character, strength, distinctive quality, and good reputation of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks.

73.     As set forth above, particularly by way of its claiming to *be* Commonwealth Limo and, upon information and belief, its failure to disclaim affiliation with Commonwealth Limo when asked, Defendant has demonstrated its willful intent to trade upon Commonwealth Limo's reputation and to cause dilution of its famous marks.

74.     Commonwealth Limo has been damaged by Defendant's acts.

75.     Commonwealth Limo is entitled to injunctive relief to prohibit Defendant's further use of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks, the "Commonwealth Livery" mark, and any other confusingly similar mark or name, pursuant to 15 U.S.C. § 1125(c)(1).

76.     Commonwealth Limo is further entitled to an award of damages pursuant to 15 U.S.C. §§1117 and 1125(c)(2).

## COUNT IV
### TRADEMARK INFRINGEMENT IN VIOLATION OF MASSACHUSETTS LAW (GEN. LAWS C. 110H)

77.     Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

78.     Defendant has engaged in the unauthorized use of the COMMONWEALTH LIMO mark without the consent of Commonwealth Limo in connection with the sale, distribution, offering for sale, or advertising of its passenger transportation services.

79.     Defendant's use of the COMMONWEALTH LIMO mark and a colorable imitation thereof has caused, and is likely to cause, confusion or mistake or to deceive the relevant purchasing public at to the source of origin of the services offered by Defendant.

80.     Defendant's use of the "Commonwealth Livery" mark and its claiming to be Commonwealth Limo, as described above, constitutes trademark infringement in violation of Massachusetts General Laws c. 110H.

81.     Defendant's representation of itself as Commonwealth Limo, and its unauthorized use of the COMMONWEALTH LIMO mark or a colorable imitation thereof was intended to cause confusion or mistake, or to deceive the relevant purchasing public.

82.     Defendant's representation of itself as Commonwealth Limo and its unauthorized use of the "Commonwealth Livery" mark has caused and is likely to cause substantial and irreparable injury to Commonwealth Limo.

83.     The injury to Commonwealth Limo resulting from Defendant's acts as described above cannot be accurately computed at this time, and Defendant will continue to cause substantial and irreparable injury unless the Court immediately enjoins Defendant's use of the "Commonwealth Livery" mark, the COMMONWEALTH LIMO mark, and any other confusingly similar mark or name.

84.     Defendant's conduct as described herein has been willful, wanton, reckless, and in violation of Commonwealth Limo's Rights.

85.     Commonwealth Limo has been damaged and is entitled to injunctive relief and damages in an amount to be determined at trial.

## COUNT V
### TRADEMARK INFRINGEMENT UNDER MASSACHUSETTS COMMON LAW

86.     Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

87.     Defendant's acts in promoting and selling services identical to those of Commonwealth Limo, and doing so in connection with a trademark that is a colorable imitation of the COMONWEALTH

LIMO and/or COMMONWEALTH WORLDWIDE marks constitutes common law trademark infringement in Massachusetts. Such acts are likely to cause, and indeed have caused, confusion or mistake or to deceive the relevant purchasing public as to the source of origin of such services.

88.     Defendant's acts in using a mark confusingly similar to the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks constitutes a use of Commonwealth Limo's mark in connection with services that Commonwealth Limo cannot control. Such acts will materially damage the reputation of Commonwealth Limo and that of its services, and will damage the goodwill in the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks, which has been created by the substantial expenditure of time, effort, and money by Commonwealth Limo.

89.     Commonwealth Limo has been damaged by Defendant's acts.

90.     Commonwealth Limo is without an adequate remedy at law.

### COUNT VI
### TRADEMARK DILUTION IN VIOLATION OF
### MASSACHUSETTS LAW (GEN. LAWS c. 110H)

91.     Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding paragraphs and incorporates the same by reference herein.

92.     The COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks are famous marks. They are well-known throughout the United States, and they were famous before Defendant began using its "Commonwealth Livery" mark.

93.     Defendant's unauthorized use of the "Commonwealth Livery" mark and its reference to itself as Commonwealth Limo was intended to cause, has caused, is causing, and is likely to continue causing dilution of the distinctive quality of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE marks.

94.     Defendant's unauthorized use of the COMMONWEALTH LIMO and/or COMMONWEALTH WORLDWIDE marks, or a colorable imitation thereof, has caused and is likely to continue to cause substantial and irreparable injury to Commonwealth Limo, which injury cannot be accurately computed at this time, and which will continue to cause substantial and irreparable injury

15

unless Defendant's use of the COMMONWEALTH LIMO and COMMONWEALTH WORLDWIDE

marks, or any imitation thereof, is enjoined by the Court.

95.   Commonwealth Limo has been damaged by Defendant's acts.

96.   Commonwealth Limo is without an adequate remedy at law.

### COUNT VII
#### UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF MASSACHUSETTS LAW (GEN. LAWS c. 93A)

97.   Plaintiff Commonwealth Limo repeats and re-alleges the allegations of the preceding

paragraphs and incorporates the same by reference herein.

98.   Defendant's acts as described above have occurred primarily and substantially in

Massachusetts.

99.   Defendant's acts as described above constitute unfair or deceptive acts or practices within

the meaning of Mass. Gen. Laws c. 93A, §§ 2 and 11.

100.   Defendant's acts as described above have been done willfully and knowingly.

101.   Commonwealth Limo has been damaged as a result of Defendant's acts in an amount to

be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commonwealth Limo respectfully demands judgment against

Defendant as follows:

A.   Preliminarily and permanently enjoining Defendant Commonwealth Livery, including its

officers, directors, employees, agents, servants, successors, and assigns, as well as all those in direct or

indirect concert and participation with it, from further infringement of the COMMONWEALTH LIMO

and COMMONWEALTH WORLDWIDE marks and from using the "Commonwealth Livery" mark or

any other mark that may considered confusingly similar to the COMMONWEALTH LIMO and

COMMONWEALTH WORLDWIDE marks in connection with offering, promoting, marketing, selling,

or providing passenger transportation services;

16

      B.     Preliminarily and permanently enjoining Defendant Commonwealth Livery, including its officers, directors, employees, agents, servants, successors, and assigns, as well as all those in direct or indirect concert and participation with it, from unfairly competing with Commonwealth Limo by making false and misleading statements concerning Defendant's affiliation or common identity with Commonwealth Limo;

      C.     Ordering that all infringing articles in Defendant's possession, custody or control, including, but not limited to labels, signs, prints, advertisements and promotional material, letterhead, business cards, and any and all other materials bearing the "Commonwealth Livery" mark be delivered to an officer of the Court to be destroyed;

      D.     Ordering that Defendant account for and pay over to Plaintiff all gains, profits, and advantage derived from its unauthorized use of the "Commonwealth Livery" mark, pursuant to 15 U.S.C. §1117, Mass. Gen. Laws c. 110H, and other applicable law;

      E.     Ordering Defendant to pay Plaintiff the damages which Plaintiff has sustained by reason of the conduct alleged herein;

      F.     Ordering Defendant to pay damages totaling three times the compensatory damages for its willful and intentional misconduct as provided for in 15 U.S.C. §1117, Mass. Gen. Laws c. 93A, and other applicable law;

      G.     Allowing Plaintiff to elect, prior to final judgment, statutory damages as its recovery rather than actual damages and profits as provided in 15 U.S.C. §1117;

      H.     Ordering Defendant to pay pre-judgment interest on Plaintiff's damages as provided in 15 U.S.C. §1117 and other applicable law;

      I.     Ordering Defendant to pay the cost of this action as provided in 15 U.S.C. §1117 and other applicable law;

      J.     Ordering Defendant to pay Plaintiff's attorneys' fees as provided in 15 U.S.C. §1117, Mass. Gen. Laws c. 93A, and other applicable law; and

      K.     Granting such other and further relief as this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by

jury on all issues so triable.

Respectfully Submitted,

**COMMONWEALTH LIMOUSINE
SERVICE, INC.,**

By its attorneys,

/s/ John T. Graff
Peter J. Moser (BBO# 567593)
  *pmoser@hrwlawyers.com*
John T. Graff (BBO# 664825)
  *jgraff@hrwlawyers.com*
Laurie R. Bishop (BBO# 672535)
  *lbishop@hrwlawyers.com*
Hirsch Roberts Weinstein LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300 (telephone)
(617) 348-4343 (fax)

Dated:  September 6, 2013